UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEOFFREY W. GRAVELL,

      Plaintiff,

v.                                                       23-CV-949 (JLS)

JOHN MORLEY, Medical Doctor, Chief
Medical Officer, MICHAEL RAUH,
Wende Correctional Facility Doctor,
Ortho, CLIFFORD HURLEY,
Groveland Correctional Facility Doctor,
ANDREA CASTONGUAY, PA-C, Erie
County Medical Center, Ortho,
CRISTINA MISA, Collins Correctional
Facility Doctor, TAMARA KENNEDY,
Groveland Correctional Facility Nurse
Administrator,

      Defendants.

---

## DECISION AND ORDER

*Pro se* plaintiff Geoffrey W. Gravell is a prisoner confined at the Greene Correctional Facility. He filed a complaint asserting claims under 42 U.S.C. § 1983 and alleging that his right to be free from cruel and unusual punishment was violated by Defendants' deliberate indifference to his serious medical needs. *See* Dkt. 1. He applied to proceed *in forma pauperis* ("IFP") and included a signed authorization. Dkt. 2; Dkt. 3. He also moved to appoint counsel. Dkt. 4.

For the below reasons, Gravell's Eighth Amendment inadequate medical care claims against Defendants Dr. Morley, Dr. Rauh, Dr. Misa, and Tamara Kennedy will proceed to service. The claims against Defendants Dr. Hurley and PA

Castonguay are dismissed under 28 U.S.C. § 1915(e)(2)(B) and 1915A(b), but Gravell may file an amended complaint.

## DISCUSSION

Because Gravell meets the statutory requirements of 28 U.S.C. § 1915(a) and filed the required authorization (Dkt. 2; Dkt. 3), he may proceed IFP. This Court, therefore, screens his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

### I. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if it determines that the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b)(1)–(2).

When evaluating a complaint, a court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008)

2

("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). A court must "construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). But even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## II. Gravell's Allegations

Gravell claims that Defendants unreasonably delayed and denied surgery to repair a shoulder and bicep injury he incurred while working in the kitchen at Downstate Correctional Facility. *See generally* Dkt. 1.

In particular, he alleges that, "[w]hile working in the kitchen at Downstate Correctional Facility in August of 2018, while lifting a 55[-]gallon can full of potatoes and water with a co-worker[,] [t]he co-worker lost his grip on the can and [Gravell] took the full weight[,] and it tore [his] shoulder and bicep[] tendon." *Id.* at 9. The next day, Gravell "was in severe pain with limited range of motion[,] so [he] asked to see medical and was brought by a[n] officer." *Id.* Medical placed Gravell on "lifting restrictions" and scheduled him to go to "Fishkill Correctional Ortho," but he was transferred to Orleans Correctional Facility before his appointment. *Id.* at 10. At Orleans, a doctor examined Gravell and sent him to Albion Correctional Facility for physical therapy. *Id.* Gravell went to physical therapy twice each week from September 2018 until December 2018, when he was transferred to Collins Correctional Facility. *Id.*

3

At Collins, Dr. Ken Jin examined Gravell and scheduled an MRI and consultation at Erie County Medical Center ("ECMC"). *Id.* Gravell had an MRI at ECMC on February 13, 2019. *Id.* He returned to ECMC on March 13, 2019, and Dr. Philip Stegmann examined him. *Id.* Gravell alleges that Dr. Stegmann (1) told Gravell that he "did not think that the tear on the bicep tendon was that significant," (2) gave Gravell a shot, and (3) prescribed physical therapy. *Id.*

Gravell went to physical therapy at Gowanda Correctional Facility twice a week for ten weeks with a therapist named Amy. *Id.* He never missed an appointment. *Id.* Gravell alleges that Amy asked him several times to request his medical chart from Collins, so she would know what to treat. *Id.* He alleges that he made several requests, but Collins never sent anything. *Id.* After ten weeks of physical therapy, Gravell's arm had not improved, and Amy opined that surgery was necessary. *Id.*

On May 22, 2019, Gravell returned to ECMC. *Id.* A physician assistant ("PA"), Andrea Castonguay, gave Gravell a shot, which appeared to be the same type of shot that Dr. Stegmann had given him, except the needle PA Castonguay used appeared to be "a larger caliber needle" than Dr. Stegmann used. *Id.* Gravell alleges that he told PA Castonguay he "believe[d] she drove the needle through the bicep tendon due to the pain and [because the shot] was not what [he] felt last time." *Id.* PA Castonguay "told [him], that[] [was] what she wanted." *Id.* Gravell alleges that he asked whether the shot "would . . . make the tear worse by driving a hole in it," and told PA Castonguay "what Amy the therapist" said about surgery,

4

but nobody "looked at [an] MRI . . . to see if the arm or shoulder was healing." *Id.* PA Castonguay told Gravell "to do self-directed physical therapy[,] [stating] that [he] should be able to do it [himself] after doing it for so long." *Id.* at 11.

Gravell alleges that, on July 9, 2019, while doing self-directed physical therapy, he "heard a snap and felt pain." *Id.* On July 17, 2019, Dr. Stegmann examined Gravell at ECMC and told him, "Your bicep tendon has snapped." *Id.* Dr. Stegmann then made an appointment for Gravell "to return to ECMC in a few weeks to see how the arm was doing and to schedule surgery." *Id.* By December 2019, Gravell had not had a follow-up at ECMC. *Id.* Every time Gravell went to sick call, the officer told him he had been taken off the list. *Id.* When Gravell finally saw a nurse, she asked him, "how was your visit to ECMC on [October] 9th?" *Id.* Gravell told her that he never went. *See id.* He alleges that she said she would get him in to see the doctor. *Id.* at 12.

A few days later, Gravell alleges that medical summoned him to see Dr. Cristina Misa. *Id.* Gravell asked Dr. Misa "why had [he] not been sent to ECMC on [October] 9th." *Id.* He alleges that Dr. Misa "became angry and all she was concerned about was who told [Gravell] about that appointment. What was her name, . . . her hair color." *Id.* Gravell responded, saying, "that is not important, . . . my arm is[,] and I am still having problems with it. *Id.* He alleges that Dr. Misa said, "fine, I will send you back to ECMC." *Id.*

On February 12, 2020, Gravell had his follow-up at ECMC. Dr. Stegmann examined Gravell's arm and told him he would order a new MRI and schedule

5

surgery. *Id.* Gravell alleges that the COVID-19 pandemic began weeks later. *See id.*

In September 2021,[1] a Dr. Joe at Greene Correctional Facility told Gravell that COVID restrictions had been lifted, and that Gravell now could get an appointment with an orthopedist. *Id.* On January 6, 2022, Gravell alleges that Upstate Orthopedics examined him and told him that they could "fix [his] arm and shoulder . . . , [that] they would schedule surgery[,] and that they would see [him] back soon." *Id.*; Dkt. 1-1, at 1–2 ("preoperative paperwork" completed; "will return to the office after the surgery").

On March 6, 2022, DOCCS transferred Gravell to Groveland Correctional Facility. Dkt. 1, at 12. In May 2022, having not heard anything about his pending surgery, Gravell alleges that he went to sick call and spoke with Dr. Clifford Hurley. *Id.* After Gravell explained his medical history, Dr. Hurley "looked on his computer and told [Gravell] that the Nurse [Administrator] had canceled [Gravell's surgery]." *Id.* Dr. Hurley told Gravell he would schedule another orthopedic appointment and order "a new MRI." *Id.* at 12–13. Gravell alleges that Dr. Hurley's request for an orthopedic appointment and MRI was either denied or cancelled. *Id.* at 13.

On June 6, 2022, Gravell alleges that a Dr. Evgeny Dyskin examined him at Wende Correctional Facility. *Id.* He alleges that Dr. Dyskin "took x-rays and then

---

[1] Gravell alleges this interaction occurred in September 2022. The context of the complaint and attachments indicate that the interaction occurred in September 2021. *See* Dkt. 1, at 12–13; Dkt. 1-1, at 1–2.

6

began to say he had seen something in [Gravell's] neck that might be causing the pain in [Gravell's] shoulder and arm." *Id.*  Gravell told Dr. Dyskin that he "never had any such problems with [his] neck," but that his "rotator cuff and [his] bicep tendon had snapped and [he] would like them repaired being that [he] was already scheduled to have the surgery done." *Id.*  Gravell alleges that Dr. Dyskin related that he was a foot doctor, he did not know why "they had sent [Gravell] to see him," and that "he would have [Gravell] see a neck and shoulder specialist." *Id.*  The same day, Gravell alleges that Dr. Michael Rauh examined him at Wende and stated that "the pain [Gravell] was [experiencing] could be due to a pinched nerve in [his] neck and that he would have an MRI done and see him back." *Id.*

Back at Groveland, Gravell alleges that he told Dr. Hurley about his experience at Wende and what Dr. Rauh told him about his neck. *Id.*  "Dr. Hurley told [Gravell] specifically that when [he] return[ed] to see Dr. Michael Rauh, . . . to [ask Dr. Rauh to] please address what Dr. Hurley ha[d] sent [Gravell] there for, [his] shoulder and bicep." *Id.*  Gravell further alleges that Dr. Hurley told him to ask Dr. Rauh "if he knew what he was doing[,] and to not go and open a whole new issue by looking into [Gravell's] neck, [because Dr. Hurley's] only concern was to get [Gravell] the surgery that was already scheduled." *Id.*

In September 2022, with the MRI complete, Gravell alleges that he returned to Dr. Rauh, who told him, "I am not going to approve your surgery because you are a smoker." *Id.* at 13–14. In response, Gravell told him what Dr. Hurley "told [him] to say to him. [He] asked him if he knew what he was doing and told him that Dr.

7

Clifford Hurley told [him] to tell [Dr. Rauh] to please just address what [Dr. Hurley] had sent [him] there for, . . . [his] shoulder and bicep." *Id.* at 14. Gravell alleges that Dr. Rauh stood up, waved Gravell's file at him, and told the two escort officers that he was "done with" Gravell. *Id.*

A few weeks later, Gravell alleges that Dr. Hurley told him that his surgery had been cancelled because Gravell had been "moved to a different jail and now [he] would have to start everything back over again because of that"—which meant going to an orthopedist and getting him or her "to approve a surgery even though it was already approved." *Id.*

Gravell alleges that Dr. Hurley told him Dr. Rauh "wrote in [Gravell's] file that [Gravell] was hostile and aggressive and that he did not want [Gravell] to return to see him as a patient." *Id.* Gravell told Dr. Hurley that it was Dr. Rauh "that became hostile and aggressive when [Gravell] told him what Dr. Hurley had told [Gravell] to tell him and that we both know the officers sitting there would not have allowed me to talk that way." *Id.*

Gravell filed a facility-level grievance at Groveland. *Id.* He alleges that the facility "agreed with [him] unanimously and stated that the state needs to fix [his] arm with surgery." *Id.* The superintendent reversed the decision, and "Albany, Central Office, . . . never responded" to Gravell's appeal. *Id.*

## II. <u>Section 1983 Claims</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights" but, rather, "provides . . . a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant was a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). And *respondeat superior* liability is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

### A. Official Capacity Claims

Gravell seeks money damages against Defendants in their official capacities. *See* Dkt. 1, at 3–4. The Court, therefore, must consider the effect of the Eleventh Amendment on his claims.

Unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citation omitted). Because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents[,]" *Graham*, 473 U.S. at 169 (internal quotation marks and citation omitted), this "rule of immunity extends to cases where the action is in essence one for the recovery of money from the state, even when individual [state] officials are the nominal defendants," *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (internal quotation marks and citation omitted).

A limited exception to the Eleventh Amendment's grant of sovereign immunity exists when a plaintiff seeks injunctive relief against a state official for an ongoing violation of federal law or the Constitution. *See Graham*, 473 U.S. at 167 n.14 (citing *Ex parte Young*, 209 U.S. 123 (1908)). The theory is that "such a suit is not 'one against the State' and, therefore, is not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex parte Young*, 209 U.S. at 154)). Under this exception, a suit may proceed against a state official in his or her official capacity,

10

notwithstanding the Eleventh Amendment, when a plaintiff "(1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).

Here, Gravell seeks money damages from Defendants in their official capacities based on his Section 1983 claims. There has been no waiver of immunity or consent to suit, and Congress has not abrogated New York's Eleventh Amendment immunity for Gravell's Section 1983 claims. Because the Eleventh Amendment bars any claims for damages against Defendants in their official capacities, Gravell's claims seeking money damages against Defendants in their official capacities are dismissed, pursuant to 28 U.S.C. § 1915A(b)(2). The Court denies leave to amend those claims because any attempt to amend them would be futile. *See Cuoco*, 222 F.3d at 112.

### B. Inadequate Medical Care

To show that prison medical treatment was so inadequate that it amounted to "cruel and unusual punishments" prohibited by the Eighth Amendment, a plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). This standard includes both an objective component and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991).

As to the objective component, a serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–

37 (2d Cir. 2000) (internal quotation marks and citation omitted). A medical need is objectively "serious for constitutional purposes if it presents a condition of urgency that may result in degeneration or extreme pain." *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) (internal quotation marks and citations omitted). Often, "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

As to the subjective component, a plaintiff must show that a defendant acted, or failed to act, "while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* at 102, 106 (internal quotation marks omitted).

At this screening stage, Gravell plausibly alleges that he suffered from a serious medical need, and that Dr. Morley, Dr. Rauh, Dr. Misa, and Tamara Kennedy were deliberately indifferent to that need when they denied Gravell

medical care by cancelling his medical appointments, and by unreasonably delaying his surgery.[2] *See* Dkt. 1, at 6, 8 (Misa), 5–7 (Kennedy, Morley), 8, 14 (Rauh).

Gravell's allegations regarding Dr. Hurley and PA Castonguay, however, are insufficient to allege deliberate indifference. Gravell alleges that Dr. Hurley cancelled various appointments, but he also alleges facts demonstrating that Dr. Hurley delivered medical care to Gravell and advocated for him. The allegations regarding PA Castonguay—that she drove a large-bore needle through Gravell's bicep—sound in medical malpractice or disagreement about the proper course of treatment, rather than a constitutional violation. The Court, therefore, dismisses Gravell's claims against Dr. Hurley and PA Castonguay. But Gravell may amend his complaint to allege additional facts regarding those Defendants' deliberate indifference to his serious medical need, if possible.

### III. Leave to Amend

An amended complaint is intended to *replace completely* the complaint and will render it of no legal effect. *See Shields v. Citytrust Bancorp*, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). As such, Gravell must include all allegations against each Defendant—including the allegations related to the claims that the Court concluded may proceed to service—so that the amended complaint stands alone as the only complaint to be answered in this action.

---

[2] The Court expresses no opinion about whether these allegations would be sufficient to withstand a motion to dismiss or a motion for summary judgment.

## IV. Motion to Appoint Counsel

Gravell moved to appoint counsel. Dkt. 4. When deciding whether to grant a request for counsel by an indigent party, courts consider "a variety of factors." *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). As a "threshold matter, . . . the district court must consider the merits of the . . . claim." *Id.* If the threshold inquiry indicates that the plaintiff "appears to have some chance of success," the court should consider other factors, including: (1) "the nature of the factual issues the claim presents"; (2) "the plaintiff's apparent ability to present the case"; and (3) whether "the legal issues presented are complex." *Id.* at 60–61.

Because no Defendant has responded to Gravell's allegations in the complaint, the Court lacks sufficient information to complete the inquiry set forth in *Hodge*. The Court, therefore, denies Gravell's motion to appoint counsel as premature.

## CONCLUSION

For the above reasons, the Court grants Gravell's IFP motion. Gravell's claims for damages against Defendants in their official capacities are dismissed, without leave to amend. His Eighth Amendment inadequate medical care claims against Defendants Dr. Morley, Dr. Rauh, Dr. Misa, and Tamara Kennedy will proceed to service. His Eighth Amendment inadequate medical care claims against Defendants Dr. Hurley and PA Castonguay are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), unless he files an amended complaint by **August 22, 2024**.

**ORDER**

IT HEREBY IS ORDERED that Gravell's IFP motion (Dkt. 2) is granted; and it is further

ORDERED that Gravell's motion to appoint counsel (Dkt. 4) is denied as premature; and it is further

ORDERED that the claims for damages against Defendants in their official capacities are dismissed, without leave to amend; and it is further

ORDERED that the Eighth Amendment inadequate medical care claims will proceed to service upon Defendants John Morley, Michael Rauh, Cristina Misa, and Tamara Kennedy; and it is further

ORDERED that the Eighth Amendment inadequate medical care claims against Defendants Clifford Hurley and Andrea Castonguay are dismissed, with leave to amend; and it is further

ORDERED that any amended complaint, as directed above, is due by **August 22, 2024**; and it is further

ORDERED that the Clerk of the Court shall send to Gravell, along with this decision and order a copy of the original complaint (Dkt. 1), a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that, if Gravell does not file an amended complaint as directed above, the Clerk's Office shall terminate Defendants Hurley and Castonguay as Defendants in this action, and shall cause the United States Marshals Service to

serve copies of the summons, complaint, and this order upon Defendants Morley, Rauh, Misa, and Kennedy without Gravell's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Gravell's favor; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997(e)(g)(2), Defendants Morley, Rauh, Misa, and Kennedy are directed to respond to the operative pleading upon service; and it is further

ORDERED that the Clerk of the Court is directed to email a copy of this decision and order to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office, at Michael.Russo@ag.ny.gov; and it is further

ORDERED that Gravell shall notify the Court in writing if his address changes. The Court may dismiss the action if he fails to do so.

Dated:   July 8, 2024
         Buffalo, New York

_____
JOHN L. SINATRA, JR.,
UNITED STATES DISTRICT JUDGE